## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JANE DOE and JOHN DOE individually and as next friends of their minor children "A" and "D", <br><br> Plaintiffs, <br><br> vs. <br><br> MELISSA VANCE in her individual capacity, and the ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES <br><br> Defendants. | Case No. 21 CV 4819 <br><br> Hon. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Jane and John Doe as next friends of their minor children "A" and "D" complain against Defendants as follows:

## THE PARTIES

1.      Plaintiff Jane Doe is the mother of, among others, minor children "A" and "D." At all relevant times, she has been and continues to be a resident of Illinois within the Northern District of Illinois. She is and has been at all relevant times married to Plaintiff John Doe.

2.      Plaintiff John Doe is the father of, among others, minor children "A" and "D." At all relevant times, he has been and continues to be a resident of Illinois within the Northern District of Illinois. He is and has been at all relevant times married to Plaintiff Jane Doe.

3.      Defendant Melissa Vance is a Child Protective Services Investigator working for co-Defendant Illinois Department of Children and Family Services. Plaintiffs sue Defendant Melissa Vance in her individual capacity.

4.      Defendant Illinois Department of Children and Family Services ("DCFS") is an agency or department of the State of Illinois created by statute. *See* 20 ILCS 505/1. It was created

"to provide social services to children and their families, to operate children's institutions, and to provide certain other rehabilitative and residential services as enumerated in this Act."

## JURISDICTION AND VENUE

5.     This action arises under 42 U.S.C. § 1983. Subject matter jurisdiction exists under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state-law administrative review and indemnification claims under 28 U.S.C. § 1367.

6.     Defendants, upon information and belief, all reside in this District and all of the tortious events alleged herein took place within this District. Accordingly, this Court has personal jurisdiction over each Defendant, and venue is proper in this Court under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

7.     The Plaintiffs are good, loving, and attentive parents. Plaintiffs are currently parents to five children ranging in ages from 4 to 14. At the time of the incidents described below, the children ranged in ages from 2 to 12. Plaintiffs' two youngest daughters on whose behalf they have sued were just over 2 ½ years old ("D") and 4 ¾ years old ("A"). Neighbors have referred to Jane Doe as "good with the kids," to John Doe as a "wonderful father," collectively as a "good couple," and to the Does and their children as "a great family."

8.     Jane works as a senior project associate for a multinational healthcare company. She received her associate degree in business management, graduating with a 4.0 average. After graduating, she worked in the Protocol Department at the Inter-American Development Bank. She has worked for her current employer for the past 19 years. Although she typically had worked in the office, she was working remotely due to the coronavirus pandemic at the time of the events alleged below. Jane's husband John has a bachelor's degree in mechanical engineering. He previously served in the United States Army. Jane and the children attend church regularly.

9.      With their children, Jane and John live in a tiny three-bedroom home in northwest Lake County, Illinois, in a small town of fewer than 10,000 people.

10.      One block over from their home is a quiet cul-de-sac, which is home to just over a dozen residences on the entire cul-de-sac, and only a handful at the end where neighborhood children frequently played. The cul-de-sac, which rarely sees any car traffic on the busiest days, saw virtually none at the relevant time. This is because of the relatively few houses at the end of that court, but even more so because it was just weeks after Governor Pritzker issued the "shelter in place" order. See EXECUTIVE ORDER IN RESPONSE TO COVID-19 ("COVID-19 EXECUTIVE ORDER NO. 8") (available at https://bit.ly/3ksBfdm) (last visited Sep. 10, 2021). Children in the neighborhood frequently played on and in the cul-de-sac on foot and on their bikes and scooters, without incident. In all of the time that the Plaintiffs have lived there, they have never heard of a car or truck hitting a child playing in that cul-de-sac.

11.      Jane and John have rules in place concerning when and where the children are allowed to play outside (beyond their own property) and whether they are permitted to do so without parental supervision. According to the neighbor, "the kids don't misbehave" and "the little kids are never outside [alone]." The Plaintiffs recall their daughter "A" going outside and off their property without them knowing and without their permission on only one prior occasion. When the children do break family rules, Jane and John conscientiously discipline their children.

12.      Following the scheduled spring break from March 23 to 27, 2020, the family's local School District closed to in-person schooling due to the coronavirus pandemic. Starting on March 30, 2020, and continuing through the time of the incident that led to the DCFS's initial finding of child neglect here, the three school-aged children were engaged in "remote e-learning" from their home.

13.    Although Jane typically worked outside the home at her employer's offices, she was working remotely at the time due to the pandemic. Since 2013, Jane and John decided that John would be a "stay-at-home dad" and he has been since that time. John's mobility around this time, however, was severely hampered due to a recent back injury.

## DCFS REPORT

14.    About a week into the "remote e-learning" schedule, on April 8, 2020, DCFS received a call from the family's neighbor regarding their second-youngest daughter, "A." The neighbor saw "A" playing by herself in a nearby neighbor's yard and the adjacent cul-de-sac. The neighbor saw "A" outside alone for just fifteen minutes before Jane came to get her daughter from outside.

## DCFS ROUTINE INVESTIGATION

15.    Shortly after lunch the following day, DCFS Child Protection Investigator, Defendant Melissa Vance visited Jane and John Doe to speak to them about the report from their neighbor. The Does acknowledged that "A" had snuck out of the house into their yard before (to play in the dirt around the house). Typically, "A" played in their yard, where she was permitted so long as her parents could see her. The Does told Defendant Melissa Vance that it was not permitted for "A" to go outside of their yard without adult supervision and informed her that when they found out that she had been out, they disciplined her with a spanking and a "time out."

16.    During the interview process, Jane also told Defendant Melissa Vance that on another occasion, "A" had climbed the bush in their front yard, which many of the other neighborhood children do. "A" had not been injured as the bush has branches starting just above ground level and continuing up the bush. The numerous branches not only made it easy for children to climb, but also made it difficult to fall very far if that ever happened when they did. The Does do

4

not recall a situation where any of their children or neighborhood children have ever fallen while climbing that bush.

17.     Although "A" has climbed the bush before, she has never fallen doing so. John Doe considers his daughter "A" to be a capable climber. Nevertheless, he does not permit "A" to climb the bush without supervision. On this occasion, when Jane found out that "A" was climbing the bush alone (without permission), both Jane and her neighbor walked to the bush to get her together. The two wanted "A" to come out of the bush on her own, but she was hesitant to do so, as she knew she would be in trouble for climbing by herself. When this happened, Jane was recovering from shoulder surgery, and was unable to lift her hands above her shoulders, the neighbor took it upon herself to usher "A" out of the bush. Jane told Defendant Melissa Vance that her neighbor was "great" for helping and was grateful to her neighbor for informing her that "A" was in the bush.

18.     During her routine investigation, Defendant Vance interviewed (or attempted to interview) each of the children, who confirmed that they felt safe in the house. They also confirmed that "A" was spanked and given a time out for wandering outside the home without a parent. Each of the children confirmed that "A" was not harmed in any way the day that she was playing in the neighbor's yard near the cul-de-sac, or the day that she climbed the bush.

19.     Defendant Vance was unable to interview "A" herself, indicating in her report that "A" was "very shy." Defendant Vance also indicated that she was unable to interview her younger sister "D", indicating that she was nonverbal toward her.

20.     Only "A" was the subject of the neighbor's report to the DCFS.

21.     No report or investigation involved "D" in any way.

22.     No one reported that either "A" or "D" or any of the Doe children were injured in any way as a result of playing in the cul-de-sac or climbing the bush. None of the children reported

being physically injured. The reporting neighbor did not report that the children were physically injured.

23.     The Defendant Melissa Vance conducted a neglect investigation under "Allegation 74" of the DCFS's relevant rules under the Abused and Neglected Child Reporting Act.  Allegation 74 pertains to "inadequate supervision." There was not and has never been any allegation of abuse of any of the Doe Children.

## DEFENDANT VANCE'S ILLEGAL STRIP SEARCHES

24.     For reasons that were unclear at the time, Defendant Vance stripped both younger girls, "A" and "D", completely naked and searched them that same day. Defendant Vance strip searched the girls despite there being no reports of any injuries to any of the children and no signs of bruises or abuse on any of the children, including of "A" and "D," and despite "D" – the 2 ½ year old not even being part of the neighbor's initial report or subsequent investigation. On top of this, Defendant Vance also photographed the two youngest girls naked in numerous poses.

25.     At the later expungement hearing, Defendant Vance testified under oath that she conducted the illegal strip searches of both girls pursuant to written DCFS policy. Specifically, as set forth the ALJ's opinion, "[w]hen asked why these photographs [and the preceding strip searches] were taken, [Defendant] Vance stated she was *following DCFS Policy and Procedure*[,] which states that she must observe a child under six years old in his/her entirety because this is a vulnerable population . . .." (Exh. 1 at 3-4).  "She testified that the Policy and Procedure had been recently emphasized in a memo from [Deputy Director, Child Protection] Tierney Stutz that was sent to all child protection staff."

## INDICATED FINDING OF NEGLECT AND SUBSEQUENT PROCEEDINGS

26.     April 24, 2020, Defendant Vance told Jane and John Doe that she would recommend that they be indicated for child neglect.

27. On April 28, 2020, Jane and John Doe were official informed that they were indicated for Allegation #74 for "child neglect" with respect to their then four-year-old daughter, "A." The basis for the indicated finding was that "A" "was able to get out of the home on two different occasions on the same day . . . without no one [sic] knowing. The neighbor had to bring the child back. The child is too young to be able to care and protect herself."

28. The Plaintiffs were notified of this finding and mailed a copy of the investigation file. They contacted Ascend Justice, a *pro bono* legal service and obtained volunteer expungement counsel (the undersigned). They timely appealed the indicated finding. The DCFS Administrative Law Judge conducted a remote hearing. Ultimately, the ALJ denied the Plaintiffs' expungement request.

## COUNT I
## DCFS INVESTIGATOR MELISSA VANCE
## SECTION 1983 – ILLEGAL STRIP SEARCH OF MINOR "A"

29. Plaintiffs incorporate by reference the allegations of paragraphs 1-28.

30. This Count I against Defendant Vance is brought in her individual capacity as a state employee.

31. At all relevant times alleged above, Defendant Vance was acting within the scope of her employment and was acting under color of law. Defendant Vance's illegal strip searches were made possible because of the authority provided by her position as a Child Protective Services Investigator under Illinois law.

32. Defendant Vance's illegal strip search of 4 ¾ year old "A" was without a warrant, without consent, without probable cause, and/or a substantial chance of discovering any evidence of wrongdoing and therefore illegal under the 4th Amendment to the United States Constitution.

33.     The illegality of such a search is well settled in the law for warrantless searches where there is an absence of probable cause and/or a substantial chance of discovering any evidence of wrongdoing.

34.     As a result of Defendant Vance's illegal strip searches, "A" has suffered and may continue to suffer harm in an amount to be proven at trial.

35.     Defendant Vance's conduct violated "A"'s right to be free from unreasonable searches and seizures. Upon information and belief, Defendant Vance acted with malice and intent, or at least with a reckless disregard of "A"'s constitutional rights.

**COUNT II**
**DCFS INVESTIGATOR MELISSA VANCE**
**SECTION 1983 – ILLEGAL STRIP SEARCH OF MINOR "D"**

36.     Plaintiffs incorporate by reference the allegations of paragraphs 1-28.

37.     This Count I against Defendant Vance is brought in her individual capacity as a state employee.

38.     At all relevant times alleged above, Defendant Vance was acting within the scope of her employment and was acting under color of law. Defendant Vance's illegal strip searches were made possible because of the authority provided by her position as a Child Protective Services Investigator under Illinois law.

39.     Defendant Vance's illegal strip search of 2 ½ year old "D" was without a warrant, without consent, without probable cause, and/or a substantial chance of discovering any evidence of wrongdoing and therefore illegal under the 4th Amendment to the United States Constitution.

40.     The illegality of such a search is well settled in the law for warrantless cases where there is an absence of probable cause and/or a substantial chance of discovering any evidence of wrongdoing.

8

41.     As a result of Defendant Vance's illegal strip searches, "D" has suffered and may continue to suffer harm in an amount to be proven at trial.

42.     Defendant Vance's conduct violated "D"'s right to be free from unreasonable searches and seizures. Upon information and belief, Defendant Vance acted with malice and intent, or at least with reckless disregard of "D"'s constitutional rights.

**COUNT III**
**ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES**
**DECLARATION THAT THE DCFS STRIP-SEARCH POLICY IS UNCONSTITUTIONAL**

43.     Plaintiffs incorporate by reference the allegations of paragraphs 1-42.

44.     Upon information and belief, based on among other things the sworn testimony of Defendant Vance in the expungement hearing, the DCFS maintained an official policy of illegally strip-searching minors.

45.     Upon information and belief, based on among other things the sworn testimony of Defendant Vance in the expungement hearing, the DCFS's policy requires, authorizes, permits, and/or is implemented in practice in such a way that Child Protection Investigators routinely strip search minors under the age of six even in the absence of allegations or evidence of: (a) injury; (b) abuse; and/or (c) other wrongdoing.

46.     Upon information and belief, the policy explicitly authorizes highly intrusive, warrantless, suspicion-less, strip searches without probable cause in violation of the searched minor's constitutional rights.

47.     The Plaintiffs' minor children have been, and other children will continue to be harmed by the DCFS's unconstitutional policy if it is not declared unconstitutional on its face or as applied to the Plaintiffs' minor children.

## COUNT IV
## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
## INDEMNIFICATION

48.     Plaintiffs incorporate by reference the allegations of paragraphs 1-47.

49.     Illinois law, specifically the State Employee Indemnification Act., 5 ILCS 350/1, *et seq.*, directs Defendant DCFS to pay any tort judgment for compensatory damages (and any associated attorneys' fees and costs) for which Illinois employees, such as Defendant Melissa Vance, are found liable for damages that result from acts taken within the scope of their employment.

50.     Defendant DCFS, as a department of the State of Illinois, is liable for any judgment entered against Defendant Vance for damages and for the associated attorneys' fees and costs.

51.     If this Court enters judgment for damages against the individual defendants, Defendant DCFS is liable to pay the judgment, as well as the associated attorneys' fees and costs.

## COUNT V
## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
## ADMINISTRATIVE REVIEW

52.     Plaintiffs incorporate by reference the allegations of paragraphs 1-51.

53.     On April 28, 2020, the DCFS notified the Plaintiffs that it was indicating a report of Allegation #74 – Inadequate Supervision as to the Plaintiffs in SCR# 2122745-B.

54.     In May 2020, the Plaintiffs requested a timely appeal of the indicated finding. On June 29, 2021, the DCFS Administrative Hearings Unit Conducted a WebEx/telephone hearing on the Plaintiff's appeal.

55.     Thereafter, the Director of the DCFS issued a final administrative hearing decision dated August 6, 2021, denying the Plaintiffs' request for expungement of the findings against them in SCR 2122745-B (AHU #55-4525 and #55-4526). A copy of the decision is attached as

Exhibit 1 in redacted form to protect the identities of the minor children and of the Plaintiffs, who have been wrongly accused of child neglect.

56.    The final administrative hearing decision should be reversed on the following grounds:

    a.    Findings of fact made by the Administrative Law Judge are against the manifest weight of the evidence;

    b.    The indicated findings are clearly erroneous as a misapplication of law to the facts in this case; and

    c.    The final administrative hearing decision violates the Plaintiffs' due process rights.

**PRAYER FOR RELIEF**

**THEREFORE**, Plaintiffs asks this Court to enter judgment against Defendants and:

A.    Award compensatory damages in an amount to be determined to compensate plaintiffs as next friends of their minor children for the injuries suffered as a result of the Defendants' illegal conduct;

B.    Declare that the DCFS policy allowing and/or requiring the illegal strip searches violates the 4th Amendment as applied to the States through the Due Process Clause of the 14th Amendment;

C.    Award punitive damages in an amount to be determined against Defendant Vance;

D.    Award costs and reasonable attorneys' fees associated with this action;

E.    Reverse the administrative hearing decision based on the grounds set forth above or on any other grounds as the Court deems just, pursuant to the Administrative Review Act; and

F.    Grant such other and further relief as this Court or a jury may deem proper and just.

## JURY DEMAND

Plaintiffs demand a trial by jury.


Dated:   September 10, 2020                    Respectfully submitted,

                                               /s/ Michael La Porte
                                               Michael R. La Porte (nrrl@fg-law.com)
                                               DUNLAP BENNETT & LUDWIG
                                               333 N. Michigan Avenue, Suite 2700
                                               Chicago, IL  60601
                                               T:  312-551-9500
                                               F:  312-551-9501

                                               *Attorneys for Plaintiffs*
                                               *Jane and John Doe as Next Friends of the*
                                               *Minor Children "A" and "D"*